# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
302 658 9200
302 658 3989 Fax

Mary B. Graham
(302) 575-7287
mgraham@mnat.com

August 3, 2005

**BY HAND DELIVERY AND ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court
844 N. King Street
Wilmington, DE 19801

    Re:    <u>Abbott Laboratories v. Bayer Healthcare LLC, C.A. No. 04-1251 (GMS)</u>

Dear Judge Sleet:

        Last week, Abbott informed the Court that it was withdrawing its infringement claims against Bayer and that Bayer would likewise withdraw its counterclaims. Although the parties have since attempted to agree on a form of dismissal order, they have been unable to do so. Accordingly, Abbott hereby asks the Court to invoke its discretion under Federal Rule of Civil Procedure 41(a)(2) to dismiss this action on the terms and conditions set forth in Abbott's attached Proposed Order of Dismissal.

        The parties have deadlocked on a single issue: the extent to which a dismissal should address Abbott's ability in the future to bring actions against Bayer for infringement of the Patents in Suit. Bayer insists that the dismissal of the Complaint state that it is "with prejudice." This would be acceptable to Abbott so long as it also states that it is clearly limited to the claims actually litigated, i.e. infringement of Bayer's current ADVIA Centaur product. Bayer, however, contends that a dismissal here should (and would, if generally-expressed as a "dismissal with prejudice") prevent Abbott from ever bringing suit based on these patents against <u>any</u> product Bayer currently manufactures or sells, essentially granting Bayer a royalty-free license. Bayer's only basis for its overreaching beyond what has actually been litigated is evidently the language in Abbott's Complaint alleging infringement through the use, manufacture or sale of products "including" the Centaur, which Bayer contends is language not expressly limiting the complaint to the Centaur (Compl. D.I. 1, at ¶¶ 7, 12, 17).

The Honorable Gregory M. Sleet
August 3, 2005
Page 2

Bayer's preclusion arguments are wrong as a matter of law. The Federal Circuit has defined a cause of action for infringement as consisting only of <u>a claim based on a particular patent against a particular device</u>. *See Foster v. Hallco Mnfg Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991); *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 618, 619 (Fed. Cir. 1995). Because claim preclusion bars only suits based on previously-litigated causes of action, patentees are free to bring new actions against previously-sued alleged infringers so long as the new action involves <u>either</u> a different patent <u>or</u> a different product. *See Kearns v. General Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996) (different patent); *Foster*, 947 F.2d at 479-80 (different product); *see also Young Engineers, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983) ("With respect to patent litigation, we are unpersuaded that an 'infringement claim,' for purposes of claim preclusion, embraces more than the specific devices before the court in the first suit."). Accordingly, a dismissal with prejudice should leave Abbott free to bring claims based on patents other than the Patents in Suit against any Bayer product or, if based on the Patents in Suit, against any product other than the one litigated in this case.

From the outset, this case has been about infringement of Bayer's ADVIA Centaur product (*see e.g.* Abbott's motion to bifurcate damages and supporting brief in C.A. No. 03-189, D.I. 195 and 196, p.2). Abbott's discovery was directed only to the Centaur (and its predecessor device, the ACS-180, which Bayer asserted to be prior art); Bayer produced no documents relating to other devices; and Abbott's infringement contentions addressed only the Centaur. In short, Bayer cannot dispute that this litigation has involved possible infringement by only the Centaur. Consequently, the law provides no basis for preclusion of future actions against devices other than the Centaur.

Nor can Bayer's position be otherwise justified. Given that the only asserted basis for a bar is purportedly ambiguous language in Abbott's Complaint, Abbott could simply move for leave to amend its Complaint to limit indisputably its allegations expressly to the Centaur. As such a motion would merely bring the pleading into (clear) accord with the actual litigation, Bayer would have no sound basis to oppose it, even though the ultimate result for preclusion purposes would be identical to the outcome Abbott seeks here. Moreover, accepting Bayer's position would essentially require patentees always to evaluate all of an alleged infringers' products at one time (or else risk preclusion of later claims), even if this required assessing at significant expense numerous products that the patentee did not suspect infringed. The resulting expansion of claims in order not to risk an argument of waiver would only increase the already great cost, length and complexity of patent litigation.

Abbott, by contrast, has initiated and litigated this action in a manner so as to resolve its claims quickly and efficiently. Prior to filing suit, Abbott analyzed a Centaur instrument and reviewed the Centaur's customer documentation. That analysis suggested that the Centaur infringed but was not conclusive because a full analysis for these methods patents required access to the Centaur source code that Abbott did not

The Honorable Gregory M. Sleet
August 3, 2005
Page 3


possess.  *See Cambridge Products, Ltd. v. Penn Nutrients*, 962 F.2d 1048, 1050 (Fed. Cir. 1992) (holding that a presuit analysis of an allegedly infringing product plus a review of available documentation justified filing an action even though full analysis could not be completed without discovery). Accordingly, Abbott early on requested the Centaur source code from Bayer, initially through informal requests and then, on the same day formal discovery began in mid-March, through written document requests.  But Bayer did not provide the 11 CDs of Centaur source code to Abbott until mid-May, so that Abbott's expert could not begin his analysis until late May.  Only a little more than a month later on July 5, Abbott informed Bayer that it would withdraw the '215 and '049 claims.  On July 25, some two months after receiving the source code – and before claim construction briefing had begun – Abbott informed Bayer that it would withdraw its last claim.

      For all of these reasons, Abbott respectfully requests that this Court enter the Proposed Order of Dismissal that Abbott has enclosed with this letter, and thereby remove any future controversy about the scope of the dismissal here.  If this Court would find helpful any additional briefing from Abbott or would like to hold a teleconference on this matter, Abbott will respond accordingly or make itself available at the Court's convenience.

      Respectfully,

      */s/ Mary B. Graham (#2256)*

      Mary B. Graham

MBG/dam
Enclosure

cc:  Dr. Peter T. Dalleo, Clerk (By Hand; w/enclosure)
     James D. Heisman, Esq. (By Facsimile; w/enclosure)
     Dale Heist, Esq. (By Facsimile; w/enclosure)
     Jeffrey I. Weinberger, Esq. (By Facsimile; w/enclosure)