# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

WEB www.cblh.com

James D. Heisman
Partner
Tel 658-9141
Fax 252-4209
Email jheisman@cblh.com
Reply to Wilmington Office

August 16, 2005

*Via e-file and hand-delivery*
The Honorable Gregory M. Sleet
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

RE:    *Abbott Laboratories v. Bayer Healthcare, LLC*, C.A. No. 04-1251-GMS

Dear Judge Sleet:

Bayer Healthcare, LLC ("Bayer") hereby opposes Abbott's August 3, 2005, letter-application under Rule 41(a)(2) for a limited dismissal with prejudice and submits this cross-motion to dismiss Abbott's complaint with prejudice in its entirety, with none of the conditions or limitations Abbott seeks.

This is a suit that should never have been brought, a sham from the outset. Yet after forcing Bayer to spend time and incur substantial expenses to defend against it, Abbott seeks now to release itself and dismiss the suit with the least possible legal consequence. Thus, despite a complaint accusing Bayer's product line in general with infringement, and the pendency of Bayer's counterclaims of patent invalidity, Abbott seeks to simply walk away, with a dismissal that is with prejudice as to the Centaur product alone. Abbott's application should be denied because it would leave Abbott free to resurrect infringement charges against other Bayer products that were already in jeopardy from this action, and because the limited dismissal Abbott seeks does not resolve Bayer's counterclaim for a declaration of invalidity of the patents.

Instead of granting Abbott's motion, the Court should dismiss Abbott's complaint in its entirety, with prejudice and without qualification. A dismissal of that form would not only resolve Abbott's infringement claims but also make adjudication of Bayer's counterclaims for declaratory relief unnecessary. Abbott does not dispute that the charges concerning Bayer's Centaur product should be dismissed with prejudice; since Abbott never bothered to pursue its broader infringement allegations, they should be dismissed with prejudice under Rule 41(b) for failure to prosecute.

Abbott's arguments as to why it is entitled to the limited dismissal it seeks are unsupportable. Abbott asserts that the only basis on which one could interpret the complaint as extending beyond the Centaur product is "ambiguous language" (Abbott Ltr. at 2). But despite

Hon. Gregory M. Sleet
8/16/2005
Page 2

Abbott's attempts to re-characterize its complaint as limited to Bayer's Centaur product, Abbott's infringement allegations were not so confined. Abbott charged Bayer's "products" in general, identifying the Centaur as exemplification, not limitation. Abbott charged that Bayer:

> made, used, offered for sale and/or sold in the United States *products* that infringe one or more claims of the 215 patent, including a *product* commercially marketed under the brand name Advia Centaur®.

D.I. 1, ¶7 (emphasis supplied). *See also* D.I. 1, ¶¶12, 17, with similar allegations for the other two patents. The argument that the infringement charges did not extend beyond the Centaur, and that therefore the dismissal with prejudice should not either, is contradicted by the record.[1]

Once discovery began, however, it became clear that Abbott never had basis for any of its infringement allegations, as to the Centaur or any other Bayer device, and as explained more fully below, confirmed that Abbott had filed this suit only to delay Bayer's own action against Abbott's Architect (CA 03-189 GMS) and to gain leverage in settlement discussions over that action. For example, as to two of the three asserted patents, Abbott never provided *any* contentions explaining how *any* claim encompassed *any* Bayer product, despite numerous formal and informal requests by Bayer to do so. Furthermore, as Abbott admits, it never bothered to conduct discovery relating to any product other than the Centaur; it never sought any evidence that would support the general allegations in its complaint. (Abbott Ltr. at 2).

Abbott argues (Ltr. at 2) that "Bayer's position would essentially require patentees to always evaluate all of an alleged infringer's products at one time," even if the products have not been charged with infringement. Abbott misses the point. The issue is not Abbott's obligation to assess products that it never charged with infringement, but rather Abbott's complete failure to evaluate products that it *did* charge. For whatever leverage Abbott hoped to gain to offset its predicament in the first suit, its complaint made a shotgun allegation of infringement against Bayer products in general. Abbott's strategy failed. It must live with the consequences.

Abbott's offer to relinquish its allegation as to the Centaur alone does not resolve the parties' controversy. Indeed, Abbot not only refuses to dismiss with prejudice its charge that products other than the Centaur system infringe, but seeks to reserve its right to re-charge those products with infringement in the future. It is to avoid situations like this that an infringement defendant is entitled to maintain its patent-related counterclaims even in the face of an offer to withdraw the underlying infringement charge as long as an Article III controversy remains. Here, in response to Abbott's broad allegations of infringement, Bayer's Answer interposed counterclaims for a declaratory judgment that there is and has been no infringement of any claim

---

[1] Abbott argues that it could make an eleventh hour amendment to the complaint that would limit Abbott's infringement charge to the Centaur product and that "Bayer would have no sound basis to oppose." (D.I. 44 at 2). Abbott is wrong. First, Abbott fails to explain why it chose not to amend the pleadings earlier, and is only now contemplating doing so upon the dismissal of its case. In all events, the time for amending pleadings has long since passed (D.I. 24 at 1), and even if Abbott had chosen that route, when Abbott sought dismissal Bayer could have requested the same relief -- unqualified full dismissal with prejudice -- that it requests now.

Hon. Gregory M. Sleet
8/16/2005
Page 3

of the Abbott patents, without limitation to any specific product, and that all three of the asserted patents are invalid. D.I. 7, at 5.

This Court retains jurisdiction over Bayer's declaratory counterclaims because a justiciable controversy remains at least as to the validity of the three patents. If "a party has actually been charged with infringement of the patent, there is, *necessarily,* a case or controversy adequate to support jurisdiction of" a counterclaim under the Declaratory Judgment Act. *Cardinal Chemical Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96 (1993) (emphasis original). That controversy is not necessarily mooted by resolution of the infringement issue against the patentee. "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Id.* Thus, in order to divest a court of jurisdiction over a declaratory counterclaim for invalidity, the patentee must agree to a broad covenant not to sue *any* of the counterclaimant's current or past products. *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1059-60 (Fed. Cir. 1995); *See also, F.B. Leopold Co, Inc. v. Roberts Filter Manufacturing Co., Inc.,* 36 U.S.P.Q.2d 1782, 1785 (W.D. Pa. 1995) (denying motion to dismiss declaratory judgment counterclaim where patentee's covenant not to sue did not extend to all past and current products but was *limited* to products "already made known to" the patentee "through discovery")(emphasis added).

Abbott, however, is unwilling to provide such a covenant, or to take a dismissal with prejudice, without qualification as to product, which would similarly eliminate Bayer's fears that Abbott has some plan to sue again. Indeed, Abbott's unwillingness to dismiss the complaint with prejudice as to *all* currently existing Bayer products only indicates that it desires another shot at those products. This Court can and should prevent Abbott from re-charging the same products under the same patents and end this case completely with a dismissal of Abbott's complaint with full prejudice, without limitation as to product.

The Court would have the authority to dismiss Abbott's complaint with prejudice as to all existing Bayer products even if the complaint had been limited to the Centaur product. Since Abbott may not simply withdraw its complaint at this stage by stipulation on its own terms under Rule 41(a)(1), the court has discretion to condition an order of dismissal "upon such terms and conditions as the court deems proper." Rule 41(a)(2). Given the history of this suit and the use Abbott made of it to seek delay of and leverage against Bayer's action, a dismissal with full prejudice is justified and proper here.

It was evident from the outset that Abbott's case had no merit. Abbott refused to answer Bayer's discovery requests for contentions of infringement, the basis upon which suit was brought, and an explanation, versus Bayer's laches defense, as to why the suit was not brought earlier. Abbott's other motives quickly became clear. Upon filing its suit, just months before Bayer's action was scheduled for trial, Abbott requested that the trial of at least the damage phase of Bayer's action be bifurcated for subsequent consolidation with the Abbott suit. (C.A. 03-189, D.I. 195). The Court summarily denied that request.[2]

---

[2] The timing of Abbott's suit was always suspicious. Abbott waited more than two years after Bayer's action was begun, and just months before it was to go to trial. At that time, Bayer's Centaur product had been on the market more than 6 years into the life of two of the Abbott patents, and more than four years

Hon. Gregory M. Sleet
8/16/2005
Page 4

The Court will also remember that during the mediation of Bayer's action held in chambers in February of this year, Abbott asserted its suit to be worth millions of dollars in the settlement calculus, but at least while Bayer was present, Abbott was unwilling -- and, we submit, unable -- to articulate any reasonable basis for its infringement charge. After the mediation and as discovery proceeded, Abbott continued to stonewall, refusing to provide a Rule 30(b)(6) witness on its basis for bringing the suit and refusing to make its in-house counsel, Mr. Murray, available to be deposed on the affidavit he had submitted in support of Abbott's bifurcation motion on the timing of Abbott's alleged pre-suit investigation.[3]

Although Abbott suggests that it did reasonably believe there was infringement and was only persuaded otherwise by its review of Bayer's source code (Abbott Ltr. at 3), the record firmly suggests otherwise. The timing of the suit -- *years* after a *meritorious* claim would have been filed -- and Abbott's repeated refusals, even at the mediation, to provide even a rudimentary explanation of the basis of its charge strongly suggest that the source code only confirmed doubts that should reasonably have prevented this suit from having been filed in the first instance.

There is yet another aspect to the legal prejudice that Bayer could suffer if Abbott retains the ability to sue again on Bayer's existing products. During investigation of its defenses, Bayer uncovered evidence that Abbott's Axsym product, which Abbott contended was the commercial embodiment of the '561 patent, the last of the patents to remain in suit, had been in public use or public display in 1991, more than one year before the filing for that patent. On June 13, Bayer served admission requests and document requests directed specifically to this issue. Abbott put off responding to this discovery and then dropped its infringement charges on the '561 patent, never having responded to Bayer's requests for admission. Abbott clearly hopes, as evident from the limited form of dismissal it seeks, to remain free to sue Bayer's now-existing products on the '561 patent again, later, when the events are further in the past and the possibility increases that relevant documents will have been lost. Dismissal of Abbott's case with full prejudice, without the reservation of rights Abbott seeks, substantially eliminates any such problem for Bayer.[4]

---

into the life of the other. On August 1, 2005, Abbott filed another suit against Bayer, albeit on different patents and different products, not in the immunodiagnostics field. (C.A. 05-3117, N.D. Cal.)

[3] On June 24, 2005, despite having had Bayer's source code for six weeks, Abbott advised Bayer that it was unable to provide infringement contentions and requested a delay in the claim construction process. Upon Bayer's request to this Court for a conference regarding Abbott's failure to produce Murray or a 30(b)(6) witness for deposition (D.I. 32), Abbott advised Bayer that it was withdrawing two of the patents. On July 6, Abbott did provide Bayer with infringement contentions as to the remaining patent (U.S. 6,096,561), but before the *Markman* issues could come to a head, Abbott indicated on July 27 that it would not pursue them. (D.I. 43). Curiously, having provided these contentions three weeks earlier, Abbott nonetheless advised the Court that "having *now* completed its analysis of Bayer's Centaur device," it was withdrawing all its claims. (*Id.*, emphasis added). Abbott's July 6 contentions, made after it had the source code for almost two months, were desperately strained. Its July 27 capitulation essentially admitted that.

[4] Minimization of such problems is one of the reasons the law provides that Bayer's counterclaim for invalidity, in the absence of a covenant by Abbott not to bring suit on any past or existing products, remains justiciable. Bayer recognizes that neither such a covenant, nor the full dismissal with prejudice Bayer asks for, would eliminate the issue of aging proofs if Abbott were to bring suit on a future product,

Hon. Gregory M. Sleet
8/16/2005
Page 5

In summary, Abbott failed to delay trial of Bayer's action on the basis of its own suit or to have Bayer accept at the mediation its naked claim that Bayer's own products were at any risk of being found to infringe. Abbott has now fully withdrawn its infringement claims. But to fully end this controversy between the parties, the Court should dismiss the claims with prejudice, without qualification and without the reservation of rights Abbott seeks. A proposed form of order is attached.

At the time the parties discussed, but could not agree on, the form of dismissal order, Bayer informed Abbott that if it did not agree to a dismissal with prejudice as to all past or existing products, and that Bayer would seek attorney fees. Bayer reserves the right to formally seek such fees. In particular, however, in the event the Court is inclined to grant Abbott's motion for a dismissal on Abbott's terms, Bayer asks that the Court, as it may in its discretion, condition the dismissal on Abbott's payment of the attorney fees and expenses Bayer incurred by having to defend this matter already.

Respectfully submitted,

/s/ James D. Heisman

James D. Heisman

Enclosure
cc:     Clerk of the Court (via e-file and hand-delivery w/ enclosure)
        Mary Graham, Esquire (via e-file and hand-delivery w/ enclosure)
        Jeffrey I. Weinberger, Esquire (via facsimile only w/ enclosure)
        412009/11113*3

but preventing Abbott from re-suing Bayer's existing products under this patent lessens the possibility that the issue will ever arise.