MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
———
302 658 9200
302 658 3989 FAX

MARY B. GRAHAM
(302) 575-7287
mgraham@mnat.com

August 23, 2005

The Honorable Gregory M. Sleet
United States District Court
844 N. King Street
Wilmington, DE 19801

      Re:    <u>Abbott Laboratories v. Bayer Healthcare LLC, C.A. No. 04-1251 (GMS)</u>

Dear Judge Sleet:

      On August 3, 2005, Abbott asked this Court, in entering a dismissal of this action, to make clear that the dismissal is with prejudice solely with respect to the specific patent claims Abbott asserted against Bayer's Centaur device. D.I. 44. Bayer's letter in opposition (D.I. 45) misconstrues the facts and focuses on irrelevant legal considerations.

      Nowhere in its five-page letter does Bayer address the law relevant to Abbott's request – the law on claim preclusion in patent infringement matters. As shown in Abbott's letter, a cause of action for infringement purposes consists only of a claim based on a particular patent against a particular device. D.I. 44 at 2. Only claims based on the particular combination of patents and accused products litigated are precluded by a dismissal with prejudice. Here, that means that Abbott may in the future – if it learns of infringement of the patents in suit by Bayer devices other than the Centaur – file an infringement claim on that basis. Bayer does not, and cannot, dispute this controlling law, which Abbott's proposed form of judgment tracks precisely. The need for clarity in the order of dismissal is highlighted by Bayer's letter, which shows that Bayer is taking the position that a terse "dismissal with prejudice" will give it a royalty-free license for all of its products.

      Bayer's belated broad characterization of the scope of this litigation is both unsupported and contrary to Bayer's own conduct in the litigation:

The Honorable Gregory M. Sleet
August 23, 2005
Page 2

- Bayer expressly limited its non-infringement declaratory judgment counterclaim to the Centaur. *See* Answer, D.I. 7, at ¶28. Contrary to Bayer's characterization (letter at 3) of the counterclaim as having been "without limitation to any specific product," the counterclaim by its very terms seeks "a declaratory judgment . . .of non-infringement of the [Patents in Suit] arising out of Bayer's making, using, offering for sale, selling, and/or methods of operating ***its ADVIA Centaur Immunoassay instrument***, either directly, or as inducing, or contributing to infringement." D.I. 7 at ¶28 (emphasis added).

- Bayer limited its production of documents and responses to interrogatories, including contention interrogatories, to the Centaur, even where Abbott's discovery requests called for discovery in terms of the devices at issue without explicit reference to the Centaur. *See* Haas Decl. at ¶¶ 2-7 (enclosed).

- Now that Abbott has asked to dismiss its claims relating to the Centaur, Bayer has likewise agreed to dismiss its declaratory judgment claims in their entirety.

Bayer's assertion that its invalidity counterclaim remains justiciable is a separate issue from Abbott's request, and an irrelevant one. The issue is academic, as Bayer is not asking to pursue that counterclaim. Yet even if Bayer had asked, *and* the issue were legally relevant to the terms of Abbott's dismissal, the outcome here would not change. Bayer's counterclaim will not remain justiciable following Abbott's dismissal because Bayer will no longer be under a "reasonable apprehension…that it will face an infringement suit." *See Super Sack Mnf'g v. Chase Pkg. Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995); *Grain Processing Corp. v. American Maize-Products Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988) (affirming dismissal of invalidity counterclaims when plaintiff "steadfastly refused to assert infringement" for the challenged patent claims); *Bioxy v. Birko Corp.*, 935 F. Supp. 737, 742 (E.D.N.C. 1996) ("The voluntary dismissal with prejudice as to [the accused products] terminates this dispute, as no other activity by the defendants, *current* or contemplated, is suspected by patentee of infringement.") (emphasis added).[1]

---

[1] Bayer's reliance (D.I. 45 at 3) on *Super Sack,* 57 F.3d 1054, *F.P. Leopold Co. Inc. v. Robert Filter Mnf'g Co.*, 36 U.S.P.Q.2d 1782 (W.D. Pa. 1995), and *Cardinal Chemical Co. v. Morton Int'l*, 508 U.S. 83 (1993), to maintain this Court's jurisdiction is misplaced. *Super Sack* holds that an unconditional promise not to sue any product made or sold by the defendant for infringing the patents-in-suit eliminates subject matter jurisdiction; it does not state that only such a promise has this effect. 57 F.3d 1054. *F.P. Leopold*, by contrast, finds jurisdiction for a plaintiff that sought to dismiss certain patent claims while continuing to assert other claims from the same patent. 36 U.S.P.Q.2d at 1783-5. As for *Cardinal Chemical*, *Super Sack* itself found that decision to be "relatively narrow" and addressed only to the question of appellate jurisdiction following judgment by the trial court, not to the trial court's jurisdiction prejudgment. 57 F.3d at 1060.

The Honorable Gregory M. Sleet
August 23, 2005
Page 3

Finally, Bayer's unsupported accusations of bad faith are unfounded and inappropriate. Abbott has pursued this case expeditiously and in good faith.[2] After Bayer delayed in providing the Centaur source code for Abbott's evaluation, Abbott took a mere two months to evaluate the *eleven* CDs of materials that Bayer provided. Bayer's suggestion—based in part on the discussions at the February mediation—that Abbott knowingly pursued meritless claims is unwarranted and incorrect. Discussions within the scope of the confidential mediation cannot be used as evidence going to the merits of any claim; but in any event, if this Court were to recall that mediation, both parties placed some value on the claims Abbott brought in this action, not just Abbott.

Abbott hereby renews its request for a dismissal in accord with its proposed order and stands ready to answer any inquiries this Court might have on these issues.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

Enclosure

cc:  Dr. Peter T. Dalleo, Clerk (By Hand; w/enclosure)
  James D. Heisman, Esq. (By Facsimile; w/enclosure)
  Dale Heist, Esq. (By Facsimile; w/enclosure)
  Jeffrey I. Weinberger, Esq. (By Facsimile; w/enclosure)

480109

---

[2] Bayer challenges Abbott's alleged failure to bring this action earlier, its refusal to produce in-house counsel for a deposition on Abbott's presuit investigation, its motion to bifurcate, its settlement demands, and its timing in providing infringement contentions. D.I. 45 at 3-4. In short reply, Abbott conducted a privileged examination of the Centaur once it had a legitimate business reason to incur the substantial expense of acquiring a Centaur device. Based on this examination, Abbott brought claims that it believed to have substantial value and a motion to bifurcate to avoid awards in the two actions being based on inconsistent legal theories. Abbott also provided detailed infringement contentions—for one patent—to Bayer more than a month faster than Bayer had to Abbott in the other action, even though Abbott's patents here involved far more sophisticated technology. Thus, this action is far from the "exceptional case" required by 35 U.S.C. §285 for awarding attorneys fees, even if Bayer had properly raised the issue for decision here, which it has not.